IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMILY R. MONZI,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | Civil No. 1:26-CV-0047<br><br><br><br><br>(Chief Magistrate Judge Bloom) |

**MEMORANDUM OPINION**

## I. Introduction

Emily Monzi filed an application under Title II of the Social Security Act for disability insurance benefits on January 30, 2024. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Monzi was not disabled from her alleged onset date of disability, July 16, 2023, through March 21, 2024, the date she was last insured.[1]

Monzi now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant

[1] Tr. 22-54.

evidence as a reasonable mind might accept as adequate to support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Monzi filed for disability insurance benefits, alleging disability due to autism spectrum disorder, anxiety disorder, depressive disorder, non-diabetic hypoglycemia, heat intolerance, increased thirst, pain in her left knee, and irritable bowel syndrome.[3] Monzi was 33 years old at the time of her alleged onset of disability, had at least a high school education, and had no past relevant work.[4]

An ALJ held a hearing on Monzi's disability application on February 10, 2025.[5] Monzi and a Vocational Expert ("VE") both appeared

---

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[3] Tr. 103.
[4] Tr. 42. Monzi previously received supplemental security income beginning in 2008 due to her autism spectrum disorder and mood disorders, but these benefits ceased in May of 2015 after a consultative psychological examination evidenced medical improvement. *See* Tr. 33.
[5] Tr. 55-101.

and testified at this hearing.[6] Following this hearing, on April 11, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits.[7] The ALJ first concluded that Monzi had not engaged in substantial gainful activity since her alleged onset date.[8] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from the following severe impairments: autism spectrum disorder, generalized anxiety disorder, major depressive disorder, left knee meniscal tear status post meniscectomy, right knee degenerative joint disease, benign positional vertigo, polycystic ovarian syndrome ("PCOS"), and obesity.[9] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[10] The ALJ concluded that Monzi's mental health impairments caused only mild to moderate limitations in the four broad areas of mental functioning.[11]

---

[6] *Id.*
[7] Tr. 22-54.
[8] Tr. 27.
[9] Tr. 28.
[10] Tr. 28-30.
[11] *Id.*

Between Steps 3 and 4, the ALJ then concluded that the plaintiff has the residual functional capacity ("RFC") to perform a range of light work with additional limitations, including a limitation to simple tasks, few day to day changes, no interaction with the public, and only occasional interaction with supervisors and coworkers.[12] The ALJ considered the medical records, opinion evidence, and the plaintiff's subjective symptoms.[13] It was noted that a majority of the records related to the plaintiff's mental health impairments pre-dated the relevant disability period.[14] Ultimately, the ALJ concluded that the plaintiff was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Monzi had no relevant past work but found at Step 5 that she could perform the occupations of a marker, cleaner, and collator operator.[15] Accordingly, the ALJ found that Monzi had not met the stringent standard prescribed for disability benefits and denied her claim.[16]

---

[12] Tr. 30-31.
[13] Tr. 31-42.
[14] Tr. 32-33.
[15] Tr. 42-43.
[16] Tr. 43-44.

This appeal followed.[17] On appeal, Monzi argues that the ALJ erred by finding she could perform a range of light work, failing to consider the effects and limitations from her mental health impairments, and finding certain impairments nonsevere.[18] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[19] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20] Substantial evidence

---

[17] Doc. 1.
[18] Doc. 9.
[19] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[20] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

means less than a preponderance of the evidence but more than a mere scintilla.[21] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[22]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[23] Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[24] The ALJ is not required to use "magic" words, but rather must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[25] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[26]

---

[21] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[22] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[23] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[24] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[25] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[26] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[27] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[28] In making a disability determination, the ALJ follows a five-step evaluation.[29] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[30]

---

[27] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

[28] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

[29] 20 C.F.R. §§404.1520(a), 416.920(a).

[30] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[31] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[32] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[33]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[34] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform

---

[31] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[32] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[33] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).
[34] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

consistent with the claimant's RFC, age, education, and work experience.[35]

### B. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[36] Our review of those determinations is deferential.[37] However, the ALJ is required to "specifically identify and explain what evidence he found not credible and why he found it not credible."[38] An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[39] As the Third Circuit has noted, while "statements of the individual concerning his or her

[35] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
[36] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).
[37] *Id.*
[38] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
[39] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

symptoms must be carefully considered, the ALJ is not required to credit them."[40]

In accordance with the Social Security Rulings and Regulations, an ALJ must follow a two-step process to evaluate a claimant's reported symptoms: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[41] This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[42] To assist in the evaluation of a claimant's subjective symptoms, the Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[43]

---

[40] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

[41] SSR 16-3p.

[42] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

[43] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and

C. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is supported by substantial evidence in the record.[44] Judged against this deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

Monzi first argues that the ALJ erred in finding she was capable of performing a range of light exertional work.[45] We find this argument to be undeveloped. Indeed, while the argument seemingly focuses on Monzi's physical capabilities, *i.e.* the exertional limitations in the RFC, her entire argument is premised on her alleged limitations from her mental health impairments—namely, her ability to remain on task and her need for social isolation.[46] But the exertional level of the RFC speaks to the claimant's physical capabilities.[47] As the regulations provide,

---

intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.

[44] *Biestek*, 139 S. Ct. at 1154.

[45] Doc. 9 at 5-7.

[46] *Id.*

[47] *See* 20 C.F.R. § 416.967.

"[l]imitations are classified as exertional if they affect your ability to meet the strength demands of jobs[,]" such as "sitting, walking, lifting, carrying, pushing, and pulling."[48] Monzi fails to provide any evidence or argument regarding how her alleged mental health limitations prevent her from performing the strength demands of light exertional work with the limitations set forth in the RFC. Accordingly, there is no basis for a remand.

Monzi next argues that the ALJ failed to consider evidence of her past trauma and mental health issues, as well as an opinion from her treating provider.[49] The gravamen of this argument relates to Monzi's mental health treatment records from childhood and adolescence that pre-date the alleged disability period by almost a decade or more.[50] She also asserts that during this time, Dr. Frances Murphy, opined that Monzi had marked limitations in responding to work situations and in her social functioning abilities.[51] Monzi then contends that her testimony

---

[48] 20 C.F.R. § 416.969a(a).
[49] Doc. 9 at 8-10, 14-15.
[50] *Id.* at 8-9.
[51] *Id.* at 9.

established that these mental health issues continued into the alleged disability period.[52]

Monzi's argument is entirely unavailing. First, the ALJ did consider Monzi's records that pre-dated the disability period, noting that Monzi previously received supplemental security income and summarizing her treatment records that demonstrated she suffered from "increasingly severe behavioral and emotional problems[]" as a teenager.[53] The ALJ also recounted the records that characterized Monzi as having "difficulties with age-appropriate social, behavioral, and communication skills . . ."[54] But the ALJ further noted that treatment records during the relevant period demonstrated that, despite her testimony, which the ALJ found not entirely consistent with the

52 *Id.*
53 Tr. 32-34.
54 Tr. 33.

evidence, Monzi's mental health symptoms and overall functioning improved with treatment.[55]

While Monzi appears to argue that the ALJ's decision contravenes the opinions of her treating providers, she fails to point to any treating provider opinion. Rather, she cites the opinion of Frances Murphy, Ph.D., and incorrectly states that this opinion found marked limitations in Monzi's ability to respond appropriately to work situations and changes in a routine work setting.[56] Dr. Murphy's 2015 opinion provides no such limitation; rather, this opinion provides only a moderate limitation in the ability to maintain socially appropriate behavior and otherwise opines that Monzi experienced no significant limitations from her impairments and her impairments had improved.[57] Accordingly, this argument is entirely unavailing and provides no basis for a remand.

Monzi also asserts that the ALJ failed to further inquire into her activities of daily living and argues that her testimony established

[55] Tr. 33-39.
[56] Doc. 9 at 9.
[57] *See* Tr. 989-92.

greater limitations than found by the ALJ.[58] But the ALJ appropriately considered Monzi's activities of daily living as one factor in determining that Monzi was not as limited as she alleged.[59] Moreover, the ALJ did not rely on these findings alone; rather, the decision recounted these findings and considerations, along with the objective medical evidence and opinions, to conclude that the plaintiff was not as limited as she alleged. Thus, Monzi's argument essentially amounts to a request to reweigh the evidence, which we may not do.[60]

Finally, Monzi contends that the ALJ erroneously found several impairments to be nonsevere and failed to account for limitations from those impairments.[61] At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[62] An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," or if it is "something beyond 'a slight abnormality which would have no more than

[58] Doc. 9 at 14-15.
[59] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).
[60] *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d. Cir. 2011).
[61] Doc. 9 at 11-14.
[62] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

a minimal effect on an individual's ability to work.'"[63] This Step 2 inquiry is a de minimis screening device used to cast out meritless claims.[64] The claimant bears the burden to show that an impairment should be considered severe.[65]

At the outset, it appears that some of the impairments Monzi lists and argues should have been found severe are symptoms of her mental health impairments, such as "memory issues, past trauma and violent outbursts[.]"[66] The ALJ did, in fact, consider these symptoms in his discussion of Monzi's mental health impairments that he found severe.[67] The ALJ also considered the physical impairments or symptoms, such as Monzi's hereditary hemochromatosis and elevated IGF-1 levels, and found these impairments to be nonsevere.[68] The ALJ then stated that he considered all of Monzi's impairments, including those he found

---

[63] 20 C.F.R. 404.1520(c); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).
[64] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).
[65] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).
[66] Doc. 9 at 10.
[67] *See e.g.*, Tr. 29.
[68] Tr. 28.

nonsevere, in his RFC determination.[69] Accordingly, we find no error with the ALJ's consideration of these nonsevere impairments.

In any event, any error regarding the ALJ's consideration of these impairments would be harmless. Social Security appeals are subject to harmless error analysis, under which a remand is warranted only if the error "prejudices a party's 'substantial rights[,]'" meaning the error "likely affect[ed] the outcome of the proceeding, . . ."[70] The plaintiff carries the burden of proving that an error was harmful.[71] Here, the plaintiff provides no evidence or argument that further consideration of these symptoms and impairments would lead to a different outcome other than merely stating in a conclusory fashion that the combination of her impairments rendered her disabled.[72] Accordingly, the ALJ's Step 2 analysis does not require a remand.

In sum, we find that the ALJ considered all the evidence and adequately explained the decision to include or discount certain

---

69 *Id.*
70 *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016); *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).
71 *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).
72 Doc. 9 at 11-13.

limitations as established by the evidence. Accordingly, we find no error with the decision and conclude that substantial evidence supported the ALJ's evaluation of this case. As such, this decision will be affirmed.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 3rd day of November 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge